Argued March 1, decided March 21, 1911.

## FOLKENBERG v. FOLKENBERG.

[114 Pac. 99.]

DIVORCE—GROUNDS—CRUEL AND INHUMAN TREATMENT.

1. Where a husband had a violent temper and frequently became angry at his wife, and when angry threatened to leave her, and assaulted her on two occasions and falsely charged her with adultery, he was guilty of cruel and inhuman treatment entitling her to a divorce.

DIVORCE—CUSTODY OF CHILDREN.

2. Where a husband was guilty of cruel and inhuman treatment towards his wife, who was blameless and a good woman, she was entitled on obtaining a divorce to the custody of an infant child.

DIVORCE—ALIMONY—COSTS.

3. The decree of divorce to a wife for cruelty should award to her an undivided one-third of the husband's real estate, consisting of 2½ lots with a dwelling thereon, worth about $4,000, and the costs.

From Multnomah:  CALVIN U. GANTENBEIN, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit by Mary Folkenberg against James B. Folkenberg for divorce, on the ground of cruel and inhuman treatment.   From a decree of dismissal, plaintiff appeals.        REVERSED:  DECREE RENDERED.

For appellant there was a brief and an oral argument by *Mr. Thomas O'Day.*

For respondent there was a brief over the names of *Messrs. Finn & Lomax,* with an oral argument by *Mr. LeRoy Lomax.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Plaintiff and defendant are husband and wife, having intermarried on May 1, 1901, and lived together until June 16, 1909, when they separated.   Plaintiff commenced this suit for divorce on August 31, 1909, on the ground of cruel and inhuman treatment.   There is one child by the marriage, Floyd, born October 28, 1903.   Defendant owns 2½ lots, with a dwelling thereon, in Linnton, Oregon, of the value of about $4,000.   After trial the suit was dismissed, and plaintiff appeals.

1. There are four principal acts of cruelty relied on by the plaintiff.   The first occurred about three months before the separation.   She testifies that, after retiring one night, defendant began quarreling with her, and in great anger sat and held her by the head for two hours and would not let her move, and said:

" 'We will just have to stay here all night.' You have been telling your brother-in-law, I suppose, that I talked about him.'   He says, 'If he licks me, there will be a dead man, and there will be a dead woman in this house too.' "

The second act occurred on June 2, 1909.   Plaintiff states that he, in anger, caught her by the arm and dragged her through the hall, out to the kitchen, and pinched her arm so it was black and blue, and threw her back on the trunk.   The third act occurred on June 16, 1909.   She testifies that defendant came into the house angry, and when quarreling with her threw a wrench and file, which he had in his hand, on the floor right behind her where she was sewing and said he was going to tear the house down and burn it; and that she, fearing personal violence, left the house.   The fourth act is that he accused her of adultery.   Plaintiff further testifies that, for a long time before the separation, defendant got angry at trifles; that he was cranky all the time; that he had a violent temper and when angry would threaten to leave her; that she kept peace by doing whatever he wanted her to do; and that if she would not do things just to please him he would get angry at her.

2. The evidence is very conflicting.   Many of the circumstances testified to by plaintiff are denied by defendant, and it is difficult to ascertain the facts.   In regard to the first act of violence complained of, the main ground of the attack upon plaintiff, as she testifies, arose out of the fact that she had told her brother-in-law, Vandolah,

what defendant had said concerning him.   Plaintiff is corroborated in her account of the trouble to some extent by the fact that defendant makes complaint in his answer that she had falsely accused him of vilifying Vandolah and informing her sister of it.   Also he testified that "she stuck up for her sister.   She went and told her sister that I had talked about her and her husband, and she stuck up for her"—thus showing that there had been trouble between them about her sister and her husband, and to that extent corroborates plaintiff.   And yet he testifies he had not talked about Vandolah, that he had nothing against him, and that they had always been friends.   He admits that there had been trouble between him and plaintiff because she wanted to go to Portland with her sister, but he denies that he stated to plaintiff that he had found out that she and her sister went to places in Portland not fit for a man to go to, and that he had found out that she was not true to him, although this is testified to by plaintiff, her father and mother and brother, all of whom defendant says are good people. He admits the second item of violence charged in violently taking hold of plaintiff's arm and pinching it.

It is not necessary to state the details of each of these quarrels and all that was said and done.   It is sufficient to say that defendant was at fault, and his conduct was sufficient to and did cause plaintiff to be in great fear of personal violence at his hands.   Nothing in the evidence offered shows any improper conduct by plaintiff toward Vandolah nor in her association with any other man; nor does it show visits by her to any improper place in Portland.   On the contrary, defendant testifies that he never knew of her being with any other man or anything of that kind; that she is a good and virtuous woman.   Yet he made an ineffectual attempt at the trial to cast a cloud upon her good name.

3. In view of all the circumstances disclosed, we feel justified in accepting plaintiff's account of the first item of violence above mentioned, and that the second, which is partially admitted by defendant, took place as she testified, and this, in connection with his violent temper and quarrelsome disposition, and the circumstances which took place at the time of the separation, amount to cruelty and inhuman treatment toward plaintiff, which rendered life burdensome to her, and she is entitled to a decree of divorce, for the care and custody of the child Floyd Folkenberg, and for an undivided one-third of the real property of defendant, and costs and disbursements in this and the circuit court.

The decree of the lower court is reversed, and one rendered here accordingly.

REVERSED: DECREE RENDERED.